IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Ulysses Simon Bouie, ) | |
| ) | Cr. No. 3:08-0946 |
| Movant, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER AND OPINION** |
| United States of America, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

Movant Ulysses Simon Bouie ("Movant") is an inmate in custody of the Federal Bureau of Prisons. Movant currently is housed at FCI-Oakdale in Oakdale, Louisiana. Movant, proceeding pro se, brings this action pursuant to 28 U.S.C. § 2255.

I. FACTS AND PROCEDURAL HISTORY

On October 23, 2008, Movant was charged in a multi-defendant superseding indictment with conspiracy to possess with intent to distribute and distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count 1). A second superseding indictment was filed on January 6, 2009 that charged Movant with conspiracy to possess with intent to distribute and distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count 1); and conspiracy to launder drug proceeds and aiding and abetting, in violation of 18 U.S.C. §§ 1956(h) and 2 (Count 7). On January 22, 2009, Respondent United States of America ("Respondent" or "the government") filed an Information notifying Movant that he was subject to increased penalties pursuant to 21 U.S.C. § 851, based upon a prior Florida state court drug conviction in 2003. A third superseding indictment was filed on February 18, 2009, charging Movant with conspiracy to possess with intent to distribute and distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count 1); conspiracy to launder drug proceeds and aiding and abetting, in violation of 18 U.S.C. §§ 1956(h)

and 2 (Count 7); and use of a communication facility to facilitate the commission of a felony under the Controlled Substances Act and aiding and abetting, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2 (Counts 8-11). Movant retained William Watkins and Guy J. Notte as counsel.

Movant pleaded guilty on April 28, 2009 to Counts 1 and 7 of the third superseding indictment. The plea agreement, as amended, provided, among other things, that Movant would cooperate with the government, to include submitting to such polygraph examinations as may be requested by the government. The plea agreement provided that Movant's refusal to take or his failure to pass any such polygraph examination to the government's satisfaction would result, at the government's sole discretion, in the obligations of the government within the plea agreement becoming null and void. In the plea agreement, Movant stipulated and agreed that he has one prior felony drug conviction that would subject him to enhanced penalties under 21 U.S.C. § 851. The plea agreement recounted that, if Movant provided substantial assistance to the government, the government would move for a downward departure pursuant to U.S.S.G. § 5K1.1, 18 U.S.C. § 3553(e), or Fed. R. Crim. P. 35(b). Movant also agreed to the voluntary surrender of certain assets, including real property and vehicles. Movant agreed to voluntarily surrender any and all of his assets and property subject to forfeiture, to fully assist Respondent in the recovery and return of any such assets, and to make full and complete disclosure over all assets over which he exercised control and those held or controlled by nominees. Movant further agreed to submit to a polygraph examination on the issue of assets if Respondent deemed it necessary. In addition, Movant waived his right to contest either the conviction or the sentence in any direct appeal or other post-conviction action, including any proceedings under § 2255, except as to claims of ineffective assistance of counsel or prosecutorial misconduct. ECF No. 313.

During the plea colloquy, the AUSA reviewed each provision of the plea agreement. The AUSA informed the court that Movant had cooperated with the government and that a downward departure motion was forthcoming, as long as Movant continued to cooperate pursuant to the terms of the plea agreement. ECF No. 659, 22. Movant indicated in response to the court's queries that he understood his obligations under the plea agreement, including the obligation to be fully truthful with the government and that the government could require him to undergo a polygraph examination. Movant further informed the court that he understood that if he was not truthful and did not pass a polygraph examination to the government's satisfaction, the agreement would be null and void. Id. at 22-25.

The AUSA then summarized the government's evidence. Among other things, the AUSA stated that Movant had been identified as a supplier of Robert Jones, a co-defendant, who was a major supplier of cocaine to an organization in Orangeburg County, South Carolina. The AUSA indicated that intercepted telephone calls led agents to believe that Movant had sources of kilogram quantities of cocaine in Miami, Florida, and in Texas. The AUSA further recounted that Jones was arrested and began cooperating with the government in November 2008. Jones provided information that he and Movant had been engaged in cocaine transactions since late 1997. According to the Assistant United States Attorney ("AUSA"), Jones estimated that he purchased or that Movant facilitated from his sources of supply between seventy-three and ninety-five kilograms of powder cocaine from 1997 to the date Jones was arrested.

The AUSA further informed the court that Movant conspired with others to convert cash proceeds into money orders for the purpose of concealing the nature and source of the funds. Id. at 27-31. Movant indicated to the court that he understood the statements of the government and

3

agreed with the evidence gathered against him.  Id. at 33.

A Presentence Investigation Report (PSR) was prepared by the United States Probation Office (USPO).  Movant was attributed 147.528 kilograms of cocaine powder for a base offense level of 36 as to Count 1.  Movant was assessed an additional three points for being a supervisor or manager of criminal activity involving five or more participants, for an adjusted offense level of 39. As to Count 7, Movant's base offense level was determined to be 36.  Movant received a two point increase for being convicted under 18 U.S.C. § 1956, as well as three points for being a supervisor or manager of a criminal activity involving five or more participants, for an adjusted offense level of 41.  The offenses were grouped together pursuant to U.S.S.G. § 3D1.3(a) for a combined adjusted offense level of 41.  Movant received a three-level reduction for acceptance of responsibility, for a total offense level of 38.   Movant further was determined to have a subtotal criminal history score of zero points, for a criminal history category of I.  Movant's guidelines range was 235 to 293 months.  However, because Movant faced a mandatory minimum sentence of 240 months, Movant's guidelines range became 240 to 293 months.  ECF No. 604.

Movant appeared before the court for sentencing on June 7, 2010.  Movant, through trial counsel, withdrew any objections to the PSR.  The following discussion then took place:

> MR. NOTTE: I'm Guy Notte and I represent, along with Mr. Watkins, Mr. Bouie. Mr. Bouie and I go back several years. And I want to emphasize upon the court, reemphasize with the government, the cooperation that this man has afforded the government. I was in on just about every debriefing with the DEA and Mr. Bouie. From the very beginning this was a cooperation case.  He cooperated and was debriefed, of course, by South Carolina DEA, not only in Columbia, but in Wilmington. On one of the first occasions there was Miami DEA. They were very, very concerned about solving some crimes down there, up to including some murders, not in which he was involved but the information he had. He was willing, as a matter of fact, I had thought that he was going to go down there to testify, which he said he was willing to do as long as it would not put his family in grave danger.

4

That was -- those debriefings were on more than one occasion.

Not only Miami, Corpus Christi, Texas DEA came in.  Two agents, not only from -- two agents from Corpus Christi came in. The hours upon hours that consumed more than one 24 day. Extensive information, information that they sat on the edge of their seats to get.  They were very anxious to get as much information as they could from him.

As a matter of fact, in one occasion, backing up to Miami, I believe it was in Miami, somebody, a fugitive had been on the run for ten years and because of his information he was captured. There were several, I don't know how many, maybe Mr. Rowell knows, several people arrested in these various jurisdictions because of this man's cooperation.  To this day he's willing to stand by his word and go to Miami, Corpus Christi, Wilmington, and here in Columbia to testify in court against the individuals against whom he has given information.

The DEA in Columbia was very, very interested about a car dealer in Savannah, Georgia, a millionaire who had several dealerships and who apparently was involved in mass trafficking of cocaine. Mr. Bouie gave the DEA extensive information about that, Judge.  I'm not going to get into the fact about the polygraph or the individual, I think he's an attorney, who supposedly told the government that he had these assets hidden. I'm not going to address that because both Mr. Watkins and I and Mr. Bouie don't want to glorify that.  This is a cooperation case.  He's ready, willing and able to testify in any court in any jurisdiction, and we hope that down the road -- we're asking for, of course, for the minimum allowable for this court to impose upon him today, your Honor.  But we hope that this information will come to bear upon a Rule 35 perhaps one day, that he will be called upon to testify in Corpus Christi or Miami or someplace else so that he could get a downward departure commensurate with the information, the voluminous information that he's given the government, your Honor.

With that, I can say no more. I've never, in 42 years of practicing law, have never seen a person, a client or anyone else, give the government so much information, so many jurisdictions, and I hope and pray that some day soon that Mr. Bouie will benefit for placing himself and his family in danger and being so willing to make right what -- because there's so many wrongs that he has committed.  Thank you, your Honor.

. . . .

THE COURT:  All right. Let me ask the government, Mr. Notte has made reference to the cooperation that Mr. Bouie has provided. Is the government aware of that or is there –

MR. ROWELL: Yes, ma'am, we're fully aware of it. And it was -- Judge, just to kind of give you some background on Mr. Bouie's case, he did, no question, he began cooperating very early on. When he began cooperating, unbeknownst to Mr. Bouie several of the individuals, Robert Jones and some individuals out of the Texas, Corpus Christi investigation had cooperated prior to Mr. Bouie cooperating, so we did have some information on some of the individuals that he had been dealing with.

That being said, he did provide us with a lot of information about some investigations ongoing in Miami. Agents did meet with him about those investigations.

To sort of speak to some of the comments Mr. Notte made, for reasons completely beyond Mr. Bouie's control, beyond the U.S. Attorney's Office and the DEA and the District of South Carolina's control, the Miami office of the DEA has not to date followed up on that information. That may in the future present him with an opportunity to testify. I can say that with respect to safety issues, the information that he has provided with respect to the Miami investigation and the Corpus Christi investigation, to my knowledge that information has not been disseminated to any defendants in those jurisdictions. When we gave it out in discovery in our case here in South Carolina we redacted that information out, so I don't think that information has been used to further the prosecution or investigation of any other individuals at this time.

Now, with respect to other people charged in his case, he has provided information against Martinique Moore, Ann Butler, and some others, Mr. Jones who I indicated had testified or had cooperated before him. He certainly provided a wealth of information.

The reason that we are not asking the court for a 5K, your Honor, late into this process, I believe within the past several months, I received information from an individual at the Lexington County Detention Center who was housed with Mr. Bouie. He was being prosecuted by Mr. Holliday in our office. This individual made contact with me through Mr. Holliday and advised that Mr. Bouie was telling him in the jail that he had assets that he had made during the course of his activities in this conspiracy that he had hidden from the government. He gave some information about those assets, described to this individual the method that he had used to hide these assets.

I contacted my agent, told him about this information, told him to follow up with Mr. Bouie and interview him on those issues. Mr. Bouie denied making those statements, denied having any assets that he had failed to disclose to the government. He was subsequently polygraphed on those issues by Special Agent Jeff Newton with the FBI. He was asked two questions, are you hiding any assets from the government, to which he answered no. And have you failed to disclose any assets

> to the government, to which he answered no. And Special Agent Newton's report indicates that deception was indicated. And the government takes the position that he did not live up to the terms of his plea agreement.
>
> We discussed that with counsel. We also discussed that in light of his cooperation and in light of the information that he provided we were not going to ask the court to take away acceptance of responsibility, and that's why we are where we are.
>
> And also for the record, your Honor, and I don't know [if] Mr. Bouie has heard this, but it's the government's position and we believe based on this tip, and also based on the failed polygraph, he is still withholding assets. They are not asking for the court to enforce the plea agreement. At this time the government is not the asking court to hold the plea agreement void. I have held out that if he does indeed come clean on that issue there may be a possibility of a Rule 35 in the future, and I think that's what Mr. Notte was referring to. But that's why we are where we are.
>
> MR. WATKINS: We have had some extensive discussions with the government about that issue and don't really know its -- we would hope it will prove he is in fact telling the truth and that Mr. Rowell will change his mind. And Mr. Rowell, you know, would then be on the 35. We're not contesting it today and he's not contesting the 5K motion. We're not saying they are not being reasonable or it's for any other reason for not offering the 5K.

ECF No. 660, 5-7, 9-12.

Movant was committed to the custody of the Bureau of Prisons for 240 months as to Counts 1 and 7, to run concurrently. Judgment was entered on June 10, 2010. Movant filed notices of appeal on June 11, 2010, June 15, 2010, and June 18, 2010. On February 16, 2011, the Court of Appeals for the Fourth Circuit dismissed the appeal pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure.

This matter now is before the court on Movant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence, which motion was filed on March 4, 2011. On March 31, 2011, Movant filed a supplement to his § 2255 motion. On April 1, 2011, Respondent filed a motion for summary judgment and response in opposition to Movant's § 2255 motion. By order filed April 1,

2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Movant was advised of the summary judgment procedures and the possible consequences if he failed to respond adequately  Movant filed a response in opposition to Respondent's motion for summary judgment on April 28, 2011.  Respondent filed a response in opposition to Movant's supplement to his § 2255 motion on February 21, 2014.

## II.  DISCUSSION

The government has moved for summary judgment.  Pursuant to Fed. R. Civ. P. 56(a), the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The facts and any inferences drawn from the facts should be viewed in the light most favorable to the non-moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  The party seeking summary judgment bears the initial burden of demonstrating to the district court that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a genuine issue for trial.  Id.

In his § 2255 motion, Movant asserts he received ineffective assistance of counsel in the following respects:

> Ground One: Ineffective assistance of counsel–trial attorneys not objecting to the U.S. Assistant Prosecutor breaching the Plea Agreement.
>
> Ground Two: trial attornies *[sic]* ineffective for not objecting to the U.S. Assistant Prosecutor's use of polygraph results to deny [Movant's] 5K1.1 downward departure per the Plea Agreement.

8

> Ground Three: Trial attornies *[sic]* ineffective for not submitting suppression motion concerning warrantless search of vehicle by Greene County Sheriff's Office in Greensboro, Georgia, on February 2, 2008, on Interstate 20. Furthermore, counsel was ineffective for not objecting to drug weight of 744.741 grams mentioned in [the PSR] at paragraph 20, p. 8, as part of the conspiracy.[1]
>
> Ground Four: Trial attornies *[sic]* ineffective for not objecting to coconspirators' unsworn and uncorroborated statements regarding drug weights and amounts. Therefore, unsworn and uncorroborated states were unreliable.
>
> Ground Five: Trial attornies *[sic]* ineffective for not requesting downward departure under the Guidelines for disparate treatment while being detained in Lexington County Detention Center.[2]
>
> Ground Six: Trial attornies *[sic]* ineffective for not objecting to [PSR] stating [Movant] should be enhanced leadership role under sentencing guidelines.
>
> Ground Seven: Trial counsel did not object to Count 7, money laundering as a nonoffense, and [Movant] cannot plead guilty to a nonoffense.

ECF No. 770.

## Law/Analysis

Pursuant to 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." Movant contends he received ineffective assistance of counsel, in violation of his rights under the Sixth Amendment. To prove ineffective assistance of counsel, Movant must show that trial counsel's performance was deficient. See Strickland v. Washington, 466 U.S. 668, 687 (1984). An attorney's performance is deficient when it is not reasonable under prevailing professional norms. Id. at 688. Movant also must demonstrate

---

[1] Movant abandoned this ground for relief in his supplement filed March 31, 2011.

[2] Movant abandoned this ground for relief in his supplement filed March 31, 2011.

that he was prejudiced by trial counsel's alleged deficient performance, in that because of trial counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 694. Strickland requires Movant to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court then must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. Even if counsel's performance is outside the wide range of professional assistance, an error by counsel will not warrant setting aside the conviction if the error had no effect on the judgment. Id. at 694.

In Hill v. Lockhart, 474 U.S. 52 (1985), the United States Supreme Court discussed the application of the rule regarding deficient performance in cases where the defendant does not go to trial, but instead enters a guilty plea:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

Id. at 57-59 (internal citations omitted).

A. <u>Trial counsel were ineffective for failing to object to the alleged breach of the plea agreement</u> (Ground One)

Movant contends that Respondent breached the plea agreement by failing to move at sentencing for a downward departure pursuant to § 5K1.1. The judicial interpretation of a plea

agreement between the government and a defendant is largely governed by the law of contracts. United States v. Embree, 262 F. App'x 499, 504 (4th Cir. 2008) (citing United States v. Conner, 930 F.2d 1073, 1076 (4th Cir.1991)). If the plea agreement at issue is clear and unambiguous, the agreement should be enforced as written. Id. (citing United States v. Harvey, 791 F.2d 294, 301 (4th Cir.1986)). Where, as here, there is an allegation that the plea agreement was breached, the party asserting the breach must prove by a preponderance of the evidence that he fulfilled all of his obligations under the agreement. Id. at 506 (citing United States v. Snow, 234 F.3d 187, 189 (4th Cir.2000)).

As set forth in detail hereinabove, Respondent stipulated and agreed in the plea agreement to move for a downward departure in the event Movant provided substantial assistance. Movant agreed to cooperate fully in disclosing and surrendering assets to Respondent, to include submitting to a polygraph examination specifically regarding the issue of assets. Movant further understood that the obligations of Respondent would become null and void if he failed to pass a polygraph examination.

The court finds that Respondent did not breach the terms of the plea agreement by failing to move for a downward departure at sentencing. Rather, Respondent was relieved of its obligation by the polygrapher's determination that Movant showed deception in answering questions regarding the possible secreting of assets. Even if Respondent's actions were construed as a breach, Movant did not fulfill his obligations under the plea agreement; i.e., he did not pass the polygraph examination.

There being no breach of the plea agreement by Respondent, trial counsel were not ineffective for failing to object at sentencing to the government's position. Movant's Ground One

is without merit.

B.    <u>Trial counsel were ineffective for not objecting to the use of polygraph results to deny Movant's a motion for downward departure under 5K1.1</u> (Ground Two)

Movant contends that polygraph results are unreliable and inadmissible, and that trial counsel should have objected to the government's use of a polygraph examination to deny him a § 5K1.1 downward departure motion.

It is correct that, in the Fourth Circuit, polygraph examination results are generally inadmissible as unreliable. <u>United States v. Keller</u>, 2014 WL 55661, *6 (W.D. Va. Jan. 7, 2014) (unpublished) (citing <u>Knickerbocker v. Wolfenbarger</u>, 212 F. App'x 426, 432 (6th Cir. 2007)). However, by executing the plea agreement, Movant agreed to submit to a polygraph examination, and acknowledged that the government could be relieved of its responsibilities under the plea agreement if he failed to pass the examination to the government's satisfaction. <u>See</u> <u>United States v. Moultrie</u>, 172 F.3d 45 (4th Cir. 1998) (government was free to weigh apparently untruthful answers on polygraph examination in deciding against a § 5K1.1 motion, even though such information would be admissible at trial). It is axiomatic that failure to raise a meritless claim cannot serve as a ground for ineffective assistance of counsel. <u>See</u> <u>Bolender v. Singletary</u>, 16 F. 3d 1547, 1573 (11th Cir. 1994). Movant's Ground Two is without merit.

C.    <u>Trial counsel were ineffective for failing to object to drug quantities set forth in the PSR</u> (Ground Four)

Movant first contends that he did not admit to the drug quantities recited in paragraphs 20 and 32 through 41 of the PSR. Movant asserts that he admitted only to his participation in a drug trafficking conspiracy. Movant further asserts that the drug quantities set forth in the PSR were based on uncorroborated and unreliable co-conspirator statements. According to Movant, trial

counsel were deficient in failing to challenge the drug quantities attributed to him in the PSR.

If a district court relies on the drug quantities included in a PSR, the defendant bears the burden of establishing that the information is incorrect, and mere objections are insufficient. United States v. Brown, 294 F. App'x 784, 786 (4th Cir. 2008)(citing United States v. Randall, 171 F.3d 195, 210-11 (4th Cir. 1999)). A district court may consider any relevant information, including hearsay evidence, provided the information has sufficient indicia of reliability to support its probable accuracy. Id. (quoting U.S.S.G. § 6A1.3(a)).

In this case, the USPO determined Movant's drug weights as follows:

Paragraph 20: Package seized from Movant's vehicle during a traffic stop in Greensboro, Georgia: 744.41 grams of cocaine

Paragraph 32: Statements of Maurice Randolph made pursuant to a proffer agreement: 9,000 grams of cocaine

Paragraph 33: Statements of Robert Jones made pursuant to a proffer agreement: 756 grams of cocaine

Paragraph 34: Statements of Robert Jones made pursuant to a proffer agreement: 13,104 grams of cocaine

Paragraph 35: Statements of Robert Jones made pursuant to a proffer agreement: 7,024 grams of cocaine

Paragraph 36: Statements of Robert Jones made pursuant to a proffer agreement: 10,000 grams of cocaine

Paragraph 37: Statements of Robert Jones made pursuant to a proffer agreement: 1,000 grams of cocaine

Paragraph 38: Statements of Robert Jones made pursuant to a proffer agreement: 900 grams of cocaine

Paragraph 39: Statements of Robert Jones made pursuant to a proffer agreement: 27,000 grams of cocaine

>Paragraph 40:  Statements of Robert Jones made pursuant to a proffer agreement: 67,000 grams of cocaine
>
>Paragraph 41:  Statements of Robert Jones made pursuant to a proffer agreement: 6,000 grams of cocaine
>
>Paragraph 42:  Statements of Robert Jones made pursuant to a proffer agreement: 5,000 grams of cocaine
>
>Total: 147,528 grams of cocaine (147.528 kilograms)

ECF No. 24.

The court read the indictment to Movant at the change of plea hearing.  ECF No. 659, 11.  The court explained to Movant that, at trial, the government would have to prove the Movant distributed, agreed to assist in the distribution, or reasonably could foresee the distribution of the threshold quantity of cocaine, that being five kilograms.  Id. at 13-14.  The court informed Movant that he faced a minimum term of imprisonment of twenty years.  Id. at 14, 16-17.  The AUSA recounted that in the plea agreement, Movant agreed that all facts that would determine his offense level under the guidelines and pursuant to any mandatory sentence would be found by the court at sentencing using a preponderance of the evidence standard, and that the court could consider any reliable evidence, including hearsay.  Id. at 18.  Movant further stipulated in the plea agreement to the existence of one prior felony drug conviction.  Id. at 19.  Also at the plea colloquy, Movant admitted to involvement in the distribution of approximately seventy-three to ninety-five kilograms of cocaine. ECF No. 659, 34.  He indicated to the court that he understood relevant conduct and that drug amounts attributed to him could encompass the years 1997 to the date of the indictment.  Id. at 37.

Movant has failed to present any evidence that the drug weights attributed to him are inaccurate or that trial counsel had a basis for challenging the amounts.  In any event, Movant

received the sentence mandated in 21 U.S.C. § 841(b)(1)(A) based upon facts admitted at the change of plea hearing. Thus, even if trial counsel were ineffective for failing to challenge the drug amounts found by the USPO, Movant cannot show prejudice. Movant's Ground Four is without merit.

D.    <u>Trial counsel were ineffective for not objecting to enhancement for leadership role</u> (Ground Six)

Pursuant to U.S.S.G. § 3B1.1(b), a three level enhancement is appropriate if a defendant was a manager or supervisor, but not an organizer or leader, and the criminal activity involved five or more participants or was otherwise extensive. Application Note 2 provides that, to qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. Application Note 4 instructs the court to consider (1) the exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others.

Trial counsel objected to the leadership role enhancement set forth in the PSR and contended that Movant supplied drugs to a leader of a conspiracy but was otherwise a broker of drugs on his own and was not a manager, organizer, or leader. In response, the USPO observed that, according to government wiretaps, Movant controlled and exercised authority over at least one other member of the conspiracy, and possibly two. The USPO also noted that Movant was highly involved in the offense, particularly with respect to laundering the drug proceeds. In addition, the conspiracy was comprised of at least five other persons. Based on the USPO's articulation, trial counsel withdrew the objection at sentencing, with Movant's consent. ECF No. 660, 2-3.

15

The court finds trial counsel's performance was reasonable under prevailing professional norms. Further, for the reasons stated in Section C hereinabove, Movant cannot show prejudice. Regardless of the USPO's guidelines range calculations, Movant's sentence was determined with reference to § 841(b)(1)(A). Movant's Ground Six is without merit.

E.  <u>Trial counsel were ineffective for failing to object to Respondent's failure to establish an essential element of Count 7 [conspiracy to launder money in violation of 18 U.S.C. § 1956(h)]</u>  (Ground Seven)

Title 18, United States Code, Section 1956(a)(1)(A)(I) makes it unlawful for a person,

> knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified activity . . . with the intent to promote the carrying on of specified unlawful activity[.]

Section 1956(h) makes it unlawful for a person to conspire to commit any offense otherwise defined in § 1956. Because Movant was charged in Count 7 with a violation of § 1956, the court instructed Movant at the change of plea hearing that

> the government would have to prove that the conspiracy, agreement or understanding to commit money laundering was formed, reached or entered into by two or more persons, that at some time during the existence or life of the conspiracy one of the alleged members knowingly performed one or more overt acts in furtherance of the conspiracy charged in the third superseding indictment in order to further or advance the purpose of the agreement, and that at some time during the existence or life of the conspiracy, agreement or understanding the defendant knew the purpose of the agreement and did deliberately join the conspiracy, agreement or understanding.

Movant relies on <u>United States v. Santos</u>, 553 U.S. 507 (2008). In <u>Santos</u>, the Supreme Court considered whether the term "proceeds" in § 1956(a)(1) means "receipts" or "profits" with respect to an illegal gambling operation. In that case the defendant utilized a portion of monies gathered to pay salaries of his helpers and to pay the winners. The Court observed that if "proceeds" referred to "gross receipts,"

16

> nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute, because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery. Since few lotteries, if any, will not pay their winners, the statute criminalizing illegal lotteries, 18 U.S.C. § 1955, would "merge" with the money-laundering statute.

Santos, 553 U.S. at 515-16.

In United States v. Halstead, 634 F.3d 270, 279 (4th Cir. 2011), the Fourth Circuit noted that a "merger problem" can occur if a person is convicted for paying the essential expenses of operating the underlying crime. The Fourth Circuit interpreted Santos as holding that when a "merger problem" arises in the context of money laundering and illegal gambling, the required solution is to define the proceeds of the illegal gambling business as its net profits. Id. (quoting Santos, 553 U.S. at 528).

Movant contends that Respondent failed to present a factual basis to establish that "proceeds" constituted "profits" within the meaning of § 1956(a)(1)(A)(I) and Santos. The court concludes, however, that Santos is inapplicable. First, Count 7 does not implicate a substantive money laundering conviction. Rather, the government was required only to establish a factual predicate for a conspiracy. See United States v. Murphy, 993 F.2d 229, *9, n.22 (4th Cir. 1993) (noting that when conspiracy is charged, the evidence must support no more than each of the elements of conspiracy). Second, the money laundering engaged in by Movant was complete once Movant or his designee purchased a money order or other property with funds garnered from drug activity. And third, in May 2009, subsequent to the Santos decision and prior to Movant's sentencing proceeding, Congress amended the money-laundering statute to provide a definition of term "proceeds" to means "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9). Thus, Respondent

was not required to establish that the proceeds of Movant's illegal activity constituted "profits."

Trial counsel was not ineffective for failing to challenge the factual basis presented by the government with respect to Count 7.  Movant's Ground Seven is without merit.

### III.  CONCLUSION

For the reasons stated, Respondent's motion for summary judgment (ECF Nos. 784) is **granted**.  Movant's § 2255 motion (ECF No. 770) is **denied and dismissed**, with prejudice.

### IV.  CERTIFICATE OF APPEALABILITY

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable.  Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir.2001).  The court concludes that Movant has not made the requisite showing.  Accordingly, the court **denies** a certificate of appealability.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

March 10, 2014.

**NOTICE OF RIGHT TO APPEAL**

**Movant is hereby notified that he has the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.**